UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Timothy Bruns,
    Plaintiff

    v.                                    Case No. 11-cv-183-SM
                                              Opinion No. 2011 DNH 173
Town of Fryeburg, Maine,
    Defendant

**O R D E R**

Plaintiff, Timothy Bruns, filed a negligence suit in New Hampshire Superior Court against the Town of Fryeburg, Maine ("Town"). He seeks damages for injuries suffered in an accident at the Town's transfer station. The Town timely removed the case to this court (document no. 1), and now moves to dismiss the complaint for lack of personal jurisdiction (document no. 7). Plaintiff objects.

The parties have submitted documents, answers to interrogatories, and affidavits in support of their respective positions on the motion to dismiss. Where, as here, the court resolves the motion to dismiss for lack of jurisdiction without holding an evidentiary hearing, the "prima facie" standard applies. See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). "Under this standard, it is plaintiff's burden to demonstrate the existence of 'every fact required to satisfy both the forum's long-arm statute and the [D]ue [P]rocess [C]lause of

the Constitution.'"  <u>United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant Street Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993) (citations omitted).

Crediting the allegations in the complaint, it appears that, in 2007, the Town entered into a contract with North Conway Incinerator Services, Inc. ("NCIS") for trash removal and disposal.  NCIS is a New Hampshire corporation whose principal place of business is in Center Conway, New Hampshire.  Under the contract, NCIS collected trash from the Town's transfer station in Fryeburg, Maine, and transported it to a landfill site in Berlin, New Hampshire.  Bruns was employed by NCIS, and his duties included traveling from New Hampshire to the Town's transfer station in Maine and hauling trash back to the New Hampshire landfill.  Bruns alleges that during one of his visits to the transfer station in 2010 he fell while attempting to release the turnbuckles on a trash compactor can.  He alleges that the accident happened as a result of the Town's failure to properly secure the can and maintain the area adjacent to the can in a safe and reasonable manner.

Bruns asserts that this court may exercise either general or specific personal jurisdiction over the Town.

**Specific Jurisdiction**

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.  Id. at 43 n.9.  Whether specific personal jurisdiction over a defendant may be exercised is generally determined by applying a three-part test.  First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must be reasonable, in light of what are known as the "gestalt factors."  United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).  An affirmative finding as to each of those three elements — relatedness, purposeful availment, and reasonableness — is necessary to support the exercise of personal jurisdiction.  See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

In all cases, a court must begin its relatedness inquiry "by identifying the alleged contacts, since there can be no requisite nexus between the contacts and the cause of action if no contacts

exist." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001).  Here, Bruns identifies as forum contacts (1) the Town's contractual agreement with a New Hampshire company (not his employer) for the installation, repair, and maintenance of the trash compactor located at the Town's transfer station; (2) its disposal of waste in New Hampshire pursuant to its contract with AVRRDD; and (3) the Town's waste hauling contract with his employer, NCIS.

   Bruns's assertion of specific personal jurisdiction fails, however, because he has not shown that his personal negligence claim directly "arise[s] from or relate[s] to" any of those contacts.  In this circuit, the "relatedness" prong of the jurisdictional inquiry requires "a connection of proximate cause between the defendant's contacts and the plaintiff's claim." Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 216 (D.N.H. 2000) (Barbadoro, J.) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996)).  "[P]roximate or legal cause clearly distinguishes between foreseeable and unforeseeable risks of harm," and "[f]oreseeability is a critical component in the due process inquiry . . . ."  Nowak, 94 F.3d at 715.  Here, none of the Town's agreements with New Hampshire companies relating to waste disposal proximately caused plaintiff's personal injuries. Broadly speaking, those New Hampshire contacts might be described as "but for" causes, in the sense that absent the installation of

4

equipment at the facility and absent the hauling contract, Bruns would not have been at the Town's transfer station to collect the Town's waste, and would not have been injured. But those types of loosely related contacts and "but for" causation are insufficiently "related" to, and are far too indirect to support the exercise of specific personal jurisdiction.

In short, none of the Town's contacts with this forum are sufficiently related to Bruns's injury, and none constitute a "material . . . element of proof" with respect to Bruns's negligence claim. Id. (quotation omitted). Indeed, Bruns's complaint discloses that his negligence claim against the Town is not causally related to the contract between the Town and his employer at all. The complaint mentions neither the contract with NCIS nor Bruns's status as an employee of NCIS, but relies exclusively on the Town's alleged breach of its independent duty as landowner to maintain its premises in a safe condition. Although it appears from the Town's answers to interrogatories that the Town seeks to hold NCIS accountable under the hauling contract for the proper maintenance of grounds at the transfer station, that position is best described as a potential claim for indemnity or contribution, but is not pertinent to Bruns's negligence claim against the Town.

Bruns appears to concede as much.  Nevertheless, relying on Nowak, he asks this court to reject the proximate cause standard in favor of a looser causation standard, under which the relatedness test is met by the "meaningful link" between the Town's forum contacts and the "harm suffered." Id. at 716.  In Nowak, the plaintiff's wife drowned in the swimming pool of a Hong Kong hotel.  Plaintiff brought a wrongful death action in Massachusetts against the foreign corporation that owned the hotel.  The defendant's contacts with Massachusetts consisted of a series of communications with plaintiff's employer designed to solicit the employer's use of the hotel.  Id. at 711-12.  The court of appeals recognized that the foreign defendant's contacts with Massachusetts did not proximately cause plaintiff's wife's death.  Id. at 716.  It held, however, that defendant's forum contacts were sufficiently "related" to the claim because the contacts and the claim were "meaningful[ly] link[ed]."  Id.  The court emphasized, however, that this looser standard was a "narrow exception" to the proximate cause standard, and that it would apply only where "circumstances dictate."  Id.  The court found that the circumstances before it in Nowak — the "direct [. . .] target[ing]" of forum residents by a "foreign corporation" in an "ongoing effort to further a business relationship" — warranted application of the looser standard in that case.  Id. at 715.

Bruns has not shown that in this case the "circumstances dictate" deviation from the usual proximate cause standard. Although the defendant here, as in Nowak, had an ongoing business relationship with a forum corporation, and "but for" that relationship Bruns would not have traveled to Maine, the circumstances here are quite different in several respects[1], at least one of which is critical.  The tort in this case occurred in a sister state and the defendant is a municipal corporation of that state.  Maine's sovereignty interests, therefore, are strong.  The Supreme Court recently reaffirmed that personal jurisdiction doctrine rests, in part, on proper concern for the sovereign interests of co-equal states.  See J. McIntyre Mach., Ltd. v. Nicastro, __ U.S. __, 131 S. Ct. 2780, 2789 (2011) (plurality decision).

   Accordingly, because in this case the alleged tort occurred and the injury was suffered in a sister state — a circumstance not present in Nowak — this court is obliged to consider "the federal balance, which posits that each State has a sovereignty that is not subject to unlawful intrusion by other States."  Id. Application of the usual proximate cause standard under these circumstances not only promotes "foreseeability" values, as

---

[1]  E.g., plaintiff here, unlike the plaintiff in Nowak, is not faced with the troubling prospect of having no domestic forum to hear his claim absent the exercise of personal jurisdiction over a foreign defendant.

recognized in Nowak, but also protects the federal balance and Maine's own sovereign interests. As noted, Maine's interest in the litigation is strong: the alleged breach of duty occurred in Maine; the injury was suffered in Maine; the defendant is a Maine municipality; and the dispositive legal issues involve interpretation and application of Maine's Tort Claims Act — tasks appropriately undertaken by Maine's courts. See Harlow v. Children's Hosp., 432 F.3d 50, 67 (1st Cir. 2005) (finding non-forum state's "interest as a sovereign" was strong where alleged medical malpractice occurred "within its borders," and its laws would "govern th[e] dispute.") On the other hand, New Hampshire's interest in the litigation "is diminished [because] the injury occurred outside" its borders. Id. In this circuit the proximate cause standard applies in all but the narrowest of circumstances, and Bruns has not shown that a departure from its application is warranted.[2]

For these reasons, plaintiff has not made the necessary prima facie showing of specific personal jurisdiction.

---

[2] Were the court to apply the looser causation standard Bruns advocates, the outcome would probably be the same. Maine's important sovereign interests would render a finding of "reasonableness" on the third-prong unlikely. See Harlow, 432 F.3d at 67 (finding exercise of jurisdiction would be unreasonable in light of non-forum state's sovereignty interests).

## General Jurisdiction

"General jurisdiction may be found in the absence of a relationship between a nonresident defendant's contacts with the forum and the cause of action where the defendant engages in the 'continuous and systematic' pursuit of general business activities in the forum state." Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984). "Although minimum contacts suffice in and of themselves for specific jurisdiction ..., the standard for general jurisdiction is considerably more stringent." Id.

Bruns argues that this court's exercise of general jurisdiction is appropriate because (1) the Town is a member of the Mount Washington Valley Chamber of Commerce and the Mount Washington Valley Economic Council, both of which promote business and tourism in the region, and are headquartered in New Hampshire; (2) has, within the last five years, entered into contracts with four other New Hampshire businesses besides NCIS, for paving, engineering and cable services received in Maine; (3) occasionally advertised bid proposal requests in a New Hampshire newspaper; (4) participates with other regional municipalities in a "Mutual Aid Agreement" with eight New Hampshire fire districts for assistance in putting out fires; and (5) 172 New Hampshire businesses and individuals have served as "vendors" to the Town within the past five years. None of these contacts, however, are

systematic and continuous in the sense that, through them, the Town has established a "business presence" in New Hampshire. Moldflow Corp. v. Simcon, Inc., 296 F. Supp. 2d 34, 40 (D. Mass. 2003) (where defendant had no "offices, representatives, realty, personalty, bank accounts, or any other presence in Massachusetts," its sales and marketing efforts in Massachusetts did not "constitute a 'continuous and systematic' business presence" in the forum); LTX Corp. v. Daewoo Corp., 979 F. Supp. 51, 58 (D. Mass. 1997) (finding defendant's contacts with forum businesses, including contracts with forum manufacturers, did not evidence a "business presence" in the forum state).

While the Town's asserted relationship with 172 New Hampshire vendors over a five year period might suggest a continuous and systematic business presence in this state, the record is undeveloped. The transactions referenced in a "Vendor's List" filed by Bruns may have consisted of little more than the purchase of goods or services in Maine from New Hampshire suppliers. See document no. 13-1, Ex. P, "Vendor List" (internet services; flowers). Many of the entries also suggest that the Town shopped at local stores across the border. See id. (North Conway Hannaford; Anthony Walker's Bike Shop in North Conway; Center Conway Auto Repair). Procuring goods and services across state borders is not the type of activity that will subject a party to the general jurisdiction of a state. Cf.

Access Telecomm., Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 717 (5th Cir. 1999) (holding that, despite defendant's numerous cross-border business dealings with Texas companies, contacts were not continuous and systematic for purposes of general jurisdiction because "doing business with Texas" was not the same as "doing business in Texas.") (emphasis in original).

   Although the Town's contacts with New Hampshire are said to be numerous, they are not contacts of the type that amount to "continuous and systematic" contacts sufficient to subject the Town to the exercise of general jurisdiction over it in this state.  See e.g., Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984) (finding defendant corporation's contacts with the forum state were not "continuous and systematic" even where corporate officer was physically present in the forum for contract negotiations and corporation regularly purchased equipment and training services in the forum); see also Glater, 744 F.2d at 215-17 (finding contacts with New Hampshire were not continuous and systematic even though defendant advertised its products in New Hampshire and employed eight sales representatives within the state, three of whom were residents). Here, the record does not suggest that the Town's "activities manifest an intention to submit to the power of a sovereign" that is, that the Town "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the

11

benefit and protection of its laws." McIntyre, 131 S. Ct. at 2788 (citations omitted).

The Town is not subject to the exercise of general personal jurisdiction in this forum.

## Conclusion

The defendant's motion to dismiss for lack of personal jurisdiction (document no. 7) is granted.  The case is dismissed without prejudice.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 20, 2011

cc:  Christopher E. Grant, Esq.
     Susan A. Lowry, Esq.
     Michael E. Saucier, Esq.
     Mark V. Franco, Esq.